IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| GARY DUANE HEAVYGUN, | Cause No. CV 16-35-GF-DLC-JTJ |
| Petitioner, | |
| vs. | FINDINGS AND |
| | RECOMMENDATIONS OF UNITED |
| LEROY KIRKEGARD, et al., | STATES MAGISTRATE JUDGE |
| Respondents. | |

This case comes before the Court on Petitioner Gary Duane Heavygun's application for writ of habeas corpus under 28 U.S.C. § 2254. Heavygun is a state prisoner proceeding pro se.

## I.     Factual Background

On the evening of January 25, 2009, a series of events unfolded in Great Falls, Montana, that led to Heavygun ultimately being charged with eight separate offenses.  Heavygun had spent a good portion of the day drinking at his home with his cousin, Justin Wells.  At some point their conversation became heated and a physical fight ensued.  During the altercation, Heavygun stabbed Wells two times in the back.

Heavygun left his house and went to his estranged wife, Wilma's, residence.

Wilma had previously obtained an order of protection against Heavygun and although they had been in contact earlier in the day, that evening she refused to let him in her home and called 911 to report his presence.  The call was made at 8:51 p.m.; Wilma reported that Heavygun was intoxicated and trying to break down the door.  At the time, Heavygun was under intensive supervision with the Montana Department of Corrections and was wearing an ankle bracelet outfitted with a GPS monitoring device.

Upon learning Wilma was on the phone with law enforcement, Heavygun took Wilma's SUV, which could be started without a key, and fled from the residence.  Heavygun was apparently traveling at a high rate of speed and attempted to run a red light at the intersection of 15th Street North and River Drive. Heavygun, who was traveling northbound, collided into an eastbound vehicle.  A call was placed to 911 at 8:57 p.m. reporting the accident.

First responders attempted to treat Heavygun at the scene during which time Heavygun told them "my brother is dying" and "my brother is dying on my front door step and I need to get there."  Heavygun provided his address to medical personnel who then relayed the information to dispatch.  Upon arrival at Heavygun's residence, officers encountered the body of Wells on the front steps. Although efforts were made to revive Wells, it was too late.  An autopsy later confirmed that Wells had died as a result of blood loss from the stab wounds.

Officers conducted a search of Heavygun's home and discovered blood stains in the residence, as well as three knives.  One knife was next to the kitchen sink in a drying rack, the other two were in the sink submerged in water that smelled of bleach.

Heavygun was transported to the hospital.  Various individuals who either interacted with or treated Heavygun noted that he smelled of alcohol and had bloodshot and glassy eyes.  During treatment Heavygun apparently stated, "I am a bad guy," and in response to being advised he would be charged with a DUI, Heavygun observed that he would be charged with two felonies that night.  The implication being he also knew he would be charged in connection with the death of Wells.

## II.    Procedural History

Heavygun was charged in the Eighth Judicial District Court, Cascade County.  Following a jury trial, Heavygun was found guilty of:  deliberate homicide, DUI, violation of an order of protection, criminal endangerment, driving while suspended/revoked, and tampering with physical evidence.[1]  Heavygun timely filed a direct appeal.  *State v. Heavygun*, 2011 MT 111, 360 Mont. 413, 253 P. 3d 897.  Heavygun raised two issues: (1) that his right to be present at all critical

---

[1] The Court granted Heavygun's motion to dismiss the count of failure to have required motor vehicle insurance following the close of the State's case.  (Doc. 9-5 at 142).  The jury acquitted Heavygun on the charge of failing to remain at a personal injury accident scene.  (Doc. 9—6 at 123).

stages was violated when he did not personally appear for his omnibus hearing, and, (2) that he received ineffective assistance of counsel.  The Montana Supreme Court affirmed on the first issue and dismissed the ineffective assistance of counsel claim, finding it more appropriate for postconviction relief.  *Id*. at ¶¶ 16-23.

Heavygun then, through counsel, submitted a petition for postconviction relief.  (Doc. 9-12).  There, Heavygun raised six claims:  (1) Heavygun received ineffective assistance of counsel when the Office of Montana State Public Defender failed to provide continuous and uninterrupted representation by one attorney and failed to consult and communicate with Heavygun, (*Id*. at 12); (2) Heavygun received ineffective assistance of counsel when trial counsel failed to ensure Heavygun's right to a fair trial by a panel of impartial jurors (*id*.); (3) Heavygun received ineffective assistance of counsel when trial counsel failed to properly investigate a prospective juror's bias and state of mind (*id*.); (4) Heavygun received ineffective assistance of trial counsel when trial counsel failed to reasonably investigate and present evidence and testimony regarding the alleged victim's propensity for violence (*id*. at 12-13); (5) Heavygun received ineffective assistance when trial counsel failed to consult or adequately prepare Heavygun to testify in his own defense (*id*. at 13); (6) the cumulative nature of the errors prejudiced Heavygun's right to a fair trial (*id*.). *See also*, Br. in Support (Doc. 9-13).

4

The State responded to Heavygun's petition (Doc. 9-32) and filed affidavits in support from the various attorneys involved in Heavygun's representation. (Docs. 9-23 to 9-29).  Heavygun filed a reply.  (Doc. 9-33).  On June 11, 2014, the trial court held a hearing on Heavygun's petition.  (Doc. 9-36).  Heavygun's trial attorney, Scott Spencer, testified at the hearing, as did Heavygun.  On November 5, 2014, the trial court entered a written order denying Heavygun's petition on the merits. (Doc. 9-38).

On appeal from the denial of postconviction relief, Heavygun argued that he received ineffective assistance of counsel in three separate ways: (1) he was represented by more than one attorney; (2) trial counsel failed to investigate and present evidence of Wells' history of violence; (3) trial counsel failed to adequately prepare Heavygun to testify.  Heavygun also argued the cumulative effect of the claims caused prejudice and warranted reversal.  *Heavygun v. State*, 2016 MT 66, □12, 383 Mont. 28, 368 P. 3d 707.[2]  On March 22, 2016, the Montana Supreme Court analyzed the merits of each claim and denied Heavygun relief.  *Id*. at □□13-29.

### III.   Heavygun's Claims

Heavygun raises before this Court the same claims that he raised in the trial

---

[2] Notably, Heavygun did not appeal the trial court's denial of his claims related to Spencer's failure to challenge prospective juror, Fournier, for cause or to use a preemptory challenge to remove her from the jury.  See generally, *Heavygun v. State*, No. DA 14-0815, Br. of Appellant (filed July 29, 2015).

court during postconviction proceedings.  Heavygun asserts (1) the Office of the

Montana State Public Defender failed to provide continuous and uninterrupted

representation; (2) trial counsel failed to ensure Heavygun's right to a fair trial by a

panel of impartial jurors and failed to properly investigate a prospective juror's

bias and state of mind; (3) trial counsel failed to reasonably investigate and present

evidence and testimony regarding the alleged victim's propensity for violence; (4)

trial counsel failed to consult or adequately prepare Heavygun to testify in his own

defense; and, (5) the cumulative nature of the errors prejudiced Heavygun's right

to a fair trial.  (Doc. 1 at 4, ☐ 13A(i)); (Doc. 2).

### IV.    Analysis

As explained below, Heavygun's second claim relating to ineffective

assistance of counsel during jury selection fails on its merits.  The remainder of

Heavygun's claims do not survive deferential review under the AEDPA; thus, they

must also fail.  Accordingly, Heavygun's petition should be denied.

### A. Merits Review of Juror Selection Claim

Because Heavygun did not present this claim on appeal from the denial of

his postconviction petition, he failed to exhaust the claim in the state court.  It is

likely, therefore, that this claim is procedurally defaulted.  Yet, it is not necessary

for this Court to consider the procedural aspects of the claim because it is clear that

Heavygun is not entitled to relief on the merits.  Section 2254(b)(2); *Lambrix v.*

*Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

To prevail on an ineffective assistance of counsel claim, a defendant must establish that his counsel's performance was constitutionally deficient, and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. at 668, 687 (1984). Under the first prong of *Strickland*, counsel's performance is to be evaluated without the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's actions fall within the range of reasonable professional assistance; "there are countless ways to provide effective assistance in any given case." *Id*. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688. To establish prejudice under *Strickland's* second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

During voir dire, it was revealed the potential juror, Fournier, had prior jury experience having sat on the jury in three criminal trials and one civil trial. (Doc. 9-2 at 47-49). Fournier stated that her juries had returned guilty verdicts in the

criminal cases and rendered a verdict in favor of the plaintiff in the civil case.  She

explained that she worked for Head Start as a special needs assistant helping

teachers in the classroom.  *Id.* at 82.  She had been engaged in that line of work for

fifteen years and viewed herself as being a good decision maker.  *Id.*

During examination by the State, the following exchange occurred with

which Heavygun takes issue:

| | |
|---|---|
| State: | Ms. Sponheim, let me ask you, if somebody killed another person using a knife or a gun, and then claimed it was self-defense, where would you expect the wounds to be on the person killed? |
| Sponheim: | Okay.  Self-defense I would say it would be- depending on the situation. |
| State: | Where would you not expect the wounds to be? |
| Fournier: | That's a good question.  The legs, I mean, I would think if he was really trying to kill the person and what you are saying, I guess, it would be the heart, the torso.  But like arms and legs. |
| State: | Okay.  Anybody else have ideas on that? |
| Fournier: | It wouldn't be on your back. |

(Doc. 9-2 at 101-102).

In response to the question about how she would expect an individual to

react if they had just killed someone in self-defense whom they were close to,

Fournier responded, "I think it would totally depend on the person's personality.

Everybody handles stress and grief differently."  *Id.* at 103-04.  She continued, "If

8

I was to have done it on purpose, I'd run away.  If it was an accident I'd immediately call for help." *Id*. at 104.  Fournier also indicated that her son had been convicted of a crime and that she believed he had been treated fairly within the criminal justice system. *Id*. at 122.

Spencer explained his view of Fournier's responses and the manner in which he handled them in both his affidavit and during the hearing on Heavygun's petition.  Spencer indicated that he found Fournier's response about not expecting self-defense wounds to be located on someone's back and the expectation that an individual acting in self-defense would generally call 911 rather than flee the scene, are opinions that most people share.  (Doc. 9-23 at 6).  Spencer did not find that either of these responses indicated a bias against Mr. Heavygun which would require Fournier's disqualification, but rather constituted statements most people would believe to be true. *Id*. at 6-7.  Further, Spencer felt that Fournier's observation that everyone handles stress and grief differently could potentially have been helpful to Heavygun as a means to explain what could otherwise be viewed as unexpected behavior. *Id*. at 7.

Spencer also explained the reason he did not follow up with additional questions to Fournier regarding her statement about not expecting self-defense wounds to be inflicted in someone's back or calling 911, not because it showed bias on her part, but rather because it would continue to draw jurors' attention to

9

those very issues.  *Id*.  Spencer was well aware that both of these facts were

problematic for Heavygun.  Spencer explained:

> My concern would be by bringing these up, again, you are just going
> to have the jury hear, again and again, what a lot of people probably
> are thinking, which is if somebody is acting in self-defense, you don't
> bury a knife in their back.  And if you're not guilty, you don't run
> away after hiding a knife.  That would be my issue, is that I don't
> want to ring that bell over and over and over, just to get a [potential
> juror] to say, probably, but I'll set that aside and decide the case on
> the evidence.  I think that that's a bad strategy.  I employ that strategy
> all the time.

(Doc. 9-36 at 43-44).  Spencer made a reasoned and strategic decision that any

benefit of further discussing these points with Fournier for potential

disqualification would be outweighed by the potential harm of continued focus on

the subject.  (Doc. 9-23 at 7).  Spencer did not use a preemptory challenge on

Fournier because he believed there were other members of the jury panel that

needed to be removed.  *Id*.

Here, Heavygun has failed to present any evidence to overcome the strong

presumption that Spencer's performance during voir dire "might be considered

sound trial strategy."  *See Strickland*, 466 U.S. at 669.  This Court agrees with

Spencer's assessment of the answers Fournier provided regarding the location of

wounds on an individual and calling 911 following an accident.  Those comments

reflected commonly held views, and are not indicative that Fournier had actual bias

against Heavygun.  Thus, Spencer's failure to peremptorily challenge Fournier

does not constitute ineffective assistance.  *See Denham v. Deeds*, 954 F. 2d 1501, 1505 (9th Cir. 1992).

Spencer's determination that other individuals in the panel were more deserving of removal by preemptory challenge was also a reasonable strategic decision.  Moreover, Spencer's decision not to further question Fournier relative to these statements in an effort to potentially seek a challenge for cause due to the potential harm was a strategic decision.  Had Spencer pursued such a line of questioning, he likely would have drawn unwanted attention to these problematic facts.  His actions did not fall outside "the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

In short, Heavygun has failed to demonstrate that Spencer performed deficiently during voir dire. Because Heavygun cannot establish the deficient performance prong, it is not necessary to address the prejudice prong of *Strickland*. *Stanley v. Schriro*, 598 F. 3d 612, 619 (9th Cir. 2010).  This claim should be denied for lack of merit.

### B. Deferential AEDPA Review of Remaining Claims

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to Heavygun's petition because it was filed after 1996.  AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners.  *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014).  Under AEDPA, a

federal court may not grant a prisoner's petition on a claim that was decided on the

merits in state court, unless the state court's adjudication of the claim:

1. Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"'[C]learly established Federal law'… is the governing legal principle or

principles set forth by the Supreme Court [in its holdings] at the time the state

court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-71 (2003).  A

state court's decision is contrary to clearly established federal law "if the state

court applies a rule that contradicts the governing law set forth in [the Supreme

Court's] cases" or "confronts a set of facts that are materially indistinguishable

from a decision of [the] Court and nevertheless arrives at a result different from

[Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A

state court's factual findings are unreasonable if "reasonable minds reviewing the

record" could not agree with them.  *Brumfield v. Cain*, __ U.S. __, 135 S. Ct. 2269,

2277 (2015)(citations omitted).  "For relief to be granted, a state court merits ruling

must be so lacking in justification that there was an error…beyond any possibility

for fair minded disagreement." *Bemore v. Chappell*, 788 F. 3d 1151, 1160 (9th

Cir. 2015).

The remainder of Heavygun's claims all allege ineffective assistance of counsel. As set forth above, the clearly established federal law for ineffective assistance of counsel claims as determined by the Supreme Court is *Strickland v. Washington*, 466 U.S. 668 (1984). "In addition to the deference granted to the state court's decision under AEDPA, [federal habeas courts] review ineffective assistance of counsel claims in the deferential light of" S*trickland*. *Brown v. Ornoski*, 503 F. 3d 1006, 1011 (9th Cir. 2007). "The standards created by *Strickland* and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788 (citations omitted).

Because Heavygun has not established that the Montana Supreme Court's adjudication of his remaining claims was contrary to or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts, this Court must afford deference to the state court's decision.

### i.      Representation by more than one attorney

After reviewing the affidavits of the six attorneys involved in Heavygun's representation, the trial court determined that only three of the individuals involved in Heavygun's case filed formal notices of appearance of representation. (Doc. 9-38 at 8.) Of these three attorneys, Regional Director McKittrick only served as Heavygun's counsel for a period of twenty days while the transition was made

13

between Carl Jensen, Heavygun's first attorney who left the Office of the Public

Defender for private practice, and Scott Spencer of the Major Crimes Unit, who

represented Heavygun at trial. *Id*. at 7-9. Two other attorneys appeared at status

hearings, and a third attorney, Ms. Streano, was appointed to assist Spencer in a

"second chair" capacity as he prepared for trial. *Id*. at 9. The trial court found that

it was common for attorneys to appear on behalf of their colleagues at routine

hearings and that such a practice was reasonable. The trial court found Heavygun

failed to establish the first *Strickland* prong and could not demonstrate that the

attorneys from the Office of the State Public Defender performed deficiently.

Additionally, upon review of Spencer's affidavit, and letters he sent to Heavygun,

which included discussion of trial strategy, the trial court found Heavygun did not

show that Spencer failed to communicate or keep him adequately appraised of his

case. *Id*. at 10-11.

     In affirming this claim on appeal, the Montana Supreme Court determined

Heavygun's belief that representation by multiple attorneys amounted to

ineffective assistance of counsel was based upon an inaccurate representation of

the facts. *Heavygun v. State*, 2016 MT 66, ⬜16, 383 Mont. 28, 368 P. 3d 707. In

reality, Heavygun was represented primarily by Jensen and Spencer, with other

attorneys simply filling in as stand-in counsel. Those acts were not unreasonable

and the allowance of stand-in counsel did not constitute deficient performance or

fall below an objective standard of reasonableness.  *Id*. at □16.  The Court held the trial court properly denied Heavygun postconviction relief on this claim.

Heavygun does not articulate exactly how he believes the Montana Supreme Court applied *Strickland* in an objectively unreasonable manner.  *See Woodford v. Viscotti*, 537 U.S. 19, 25 (2002) (per curiam). Rather, he reiterates the argument he advanced previously that representation by different attorneys made him feel demoralized and uncertain of the outcome of his trial and gave him the feeling of merely being "processed" by the system. (Doc. 2 at 1-2).  Heavygun explains he grew tired of pre-trial hearings and trial dates being continued without his consent or consultation.  *Id*. at 2.  These acts, according to Heavygun, underscore his belief that he did not receive continuous or uninterrupted representation.

The Montana Supreme Court's determination that Heavygun was represented primarily by two attorneys, Jensen and Spencer, and that he received adequate and continuous representation finds support in the record.  And while this Court cannot intuit how the change in representation made Heavygun feel, for purposes of review that is not the relevant inquiry to be made.  Under AEDPA, habeas relief may not be granted unless "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  Because Heavygun has made no such showing, the Montana Supreme Court's finding that Heavygun's

15

attorneys provided proficient and reasonable representation should be afforded deference.

### ii.    Failure to investigate/present evidence of Well's history of violence

During postconviction proceedings, Heavygun argued that Spencer performed deficiently when he failed to investigate and present evidence of Wells's reputation and propensity for violence.  According to Heavygun, this would have supported the defense of justifiable use of force and provided additional evidence to supplement Heavygun's own testimony.  (Doc. 9-38 at 15.) Heavygun argues failure to do this deprived him of the effective presentation of his theory of self-defense.  *Id*.

Heavygun testified during trial about his personal knowledge of Wells's propensity for violence.  Heavygun testified that on more than one occasion he had observed Wells "wearing a shiner or his knuckle would be all skinned up and bragging about, you know, I beat this person up or something like that."  (Doc. 9-5 at 169.)  Heavygun explained that he and Wells had a prior disagreement involving a mutual family member that had abused Heavygun when he was seven years old. On the day of the incident, this individual became a topic of conversation, causing Wells to become angry and causing Heavygun to become fearful.  (*Id*. at 168-9.) This prior knowledge caused Heavygun unease prior to their altercation, the result being that he wanted Wells to leave his residence.  (*Id*. at 169-170.)  Heavygun

testified to an earlier fight between the two and to Wells's corresponding aggression toward Heavygun when the previous fight was brought up in discussion.  (*Id*. at 172-173; 183-84.)  Heavygun testified he felt threatened and believed he had to defend himself.  (*Id*. at 187-88; 199-200.)

In response to questioning about whether Wells's past history of violence impacted Heavygun's mindset during their altercation, however, Heavygun stated that Wells' prior history of a violent nature was not on his mind:

Spencer:     Okay.  Did anything that happened or what Justin had told you in the past, was that in your mind while this was going on?

Heavygun:  No.

Spencer:     Had this been on your mind earlier when he was acting like he was going to fight you?

Heavygun:  About the past?

Spencer:     Yeah.

Heavygun:  Not really.

(*Id*. at 188.)

There were two instances of violence pertaining to Wells on which Heavygun believes Spencer should have taken action and called witnesses to testify about.  The first involved an altercation between Wells and his common-law wife in which he apparently knocked her down a stairwell and kicked her in the face.  The second surrounded a physical altercation between Wells and the brother

of his wife.  Heavygun was not a witness to either incident.

The trial court found that Spencer did interview witnesses involved in the two incidents, but the investigation did not yield any helpful information.  (Doc. 9-38 at 17.) Under Montana law, evidence of this type was limited to that of which Heavygun had personal knowledge.  Heavygun testified to what he personally knew relative to Wells's past violence. (*Id*.)  The trial court found that Spencer did not perform deficiently and his notes indicated that he interviewed a variety of witnesses.  Further, Spencer determined that without personal knowledge, Heavygun was precluded from introducing evidence and testimony relative to Wells's violent nature.  (*Id*.)  The trial court further determined Spencer was not required to pursue inadmissible evidence or interview witnesses that would not be able to testify.  Because Spencer's actions were within the acceptable range of competency, Heavygun could not establish the first prong of deficient performance under *Strickland*.  (*Id*. at 17-18.)

In affirming the denial of this claim by the trial court, the Montana Supreme Court focused not on the performance prong of *Strickland*, but rather, on the prejudice prong.  While the Court noted that Mont. Rule Evid. 405(b) does allow evidence of a victim's character to be admissible when it relates to the reasonableness of the force used by the accused, it also noted that admissible character evidence of a victim is limited to what the defendant knew at the time he

used the force and the defendant is required to show the knowledge led him to use the level of force he did. *Heavygun v. State*, 2016 MT 66, ☐18.

Much like the trial court, the Montana Supreme Court noted that Heavygun did testify to personal knowledge that he had of Wells's history of violence. *Id.* at ☐20. Yet, the Court also noted that during direct examination, Heavygun testified that Wells' prior violence was not on his mind when Wells allegedly came toward him with a knife. *Id.* Because Wells's purported violent history was not a factor in Heavygun's decision to use deadly force against Wells, further investigation into Wells's history would not have led Spencer to admissible evidence. *Id.*

Further, Heavygun did not state who Spencer failed to interview or what their testimony would have been, but even if he had, Heavygun's own statement that Wells's violent history was not on his mind when he elected to use deadly force foreclosed the admission of the information. *Id.* at ☐21. In short, Heavygun failed to establish *Strickland* prejudice.

Here, Heavygun seems to contend that the Montana Supreme Court's adjudication of his claim was based upon an unreasonable determination of the facts. Heavygun maintains that at the postconviction hearing it was established that Spencer failed to review Exhibit D and E and that the record shows that Spencer failed to investigate this vital information. (Doc. 2 at 2). Heavygun contends that had Spencer contacted these witnesses, they would have helped to

19

explain why Heavygun acted the way he did to defend himself.  (*Id*.)  Heavygun

further asserts had Spencer investigated these two witnesses, a different trial

outcome would have resulted.  (*Id*.)

Exhibits D and E which Heavygun references were introduced at the

postconviction hearing.  They are police reports from the two prior altercations

discussed above; Wells was involved in both and Heavygun was not involved in

either.  Although Spencer could not specifically recall if he had reviewed either

report, he indicated that they were not used at trial because they were not

admissible.  (Doc. 9-36 at 60).  Spencer explained his decision not to use the

reports or call the witnesses referenced therein:

> Because the case law is real specific and not only that, I had a [case
> on] appeal two years ago that dealt with this issue.  The defendant has
> to know of these other acts in order to exert them in self-defense.  If
> he doesn't know about [them], it doesn't matter how true they are,
> they don't come in.  It is impermissible character evidence.
>
> And in this case, I had gone over Mr. – with Mr. Heavygun several
> times, what he knew.  If he didn't know about it prior to the events,
> then, it's not admissible.

(Doc. 9-36 at 60-61).

Spencer explained that his pretrial outline, discussed below, referenced at

least one of the prior incidents that Heavygun sought to have admitted. The

inference being that he knew of at least one of the prior reports of Wells's violent

conduct, but determined that the Rules of Evidence and Heavygun's lack of

personal knowledge of the incident foreclosed its admission at trial.  This was a reasonable strategic decision on Spencer's part.

Moreover, the fact that Heavygun testified that Wells's violent nature was not on his mind when he made the decision to use deadly force against Wells, further precluded the admission of any of this testimony, even if Heavygun would have had personal knowledge.  The end result is whether the *Strickland* analysis turns on Spencer's performance, as the trial court discussed, or on the prejudice prong, as the Montana Supreme Court analyzed, Heavygun's argument fails because he cannot prevail on either prong.

Further, under AEDPA, Heavygun has not met his burden of establishing that the Montana Supreme Court's determination of the facts under Section 2254(d)(2) resulted in findings that were not supported by substantial evidence in the record or that it engaged in a fact-finding process that was unreasonably deficient.  See, *Hibbler v. Benedetti*, 693 F. 3d 1140, 1146 (9th Cir. 2012) (cert denied __ U.S. __, 133 S. Ct. 1262 (2013)).  Accordingly, this Court must give deference to the state court decision.

### iii.    Failure to adequately prepare Heavygun to testify

Heavygun renews his argument that Spencer did not prepare him adequately to testify at trial.  Heavygun asserts that Spencer only spent thirty minutes prior to trial reviewing his trial outline with Heavygun. (Doc. 2 at 2).  Heavygun explains

this single meeting one week prior to trial caused him confusion and he did not understand that the outline was to be used as his defense. (*Id.*) As a result, Heavygun inadvertently brought in his own prior criminal history. Heavygun also asserts Spencer "coerced" him into not bringing up Wells's history of violence to explain Heavygun's own actions. (*Id.* at 3.) Heavygun believes had Spencer prepared him adequately, he would have testified differently and the outcome of his trial would have been different. (*Id.*)[3]

Upon review, the Montana Supreme Court found Heavygun's claim that Spencer inadequately prepared him for trial not to be credible. *Heavygun v. State*, 2016 MT 66, □23. The Court noted that Spencer had 30 years of experience practicing criminal law when he represented Heavygun. The record revealed that Spencer met with Heavygun at least seven time prior to trial. *Id.* at □27.[4] During each meeting, Spencer apparently asked Heavygun to recount the events of January 25, 2009 from start to finish. Spencer testified that Heavygun's recitation of events changed over time. *Id.* The record further revealed that Spencer communicated

---

[3] Heavygun also seems to assert that due to Spencer's failure to appear at a pretrial hearing, Heavygun declined an offer to plead to lesser included charges. Although this claim appears to be defaulted, it finds no support in the record. At a status hearing on March 30, 2010, Spencer failed to appear in person, but did appear telephonically. The hearing was reset for the following Monday. There was no discussion of a plea agreement. (Doc. 9-42). During the continued pretrial hearing on April 5, 2010, the parties made final preparations for trial. (Doc. 9-43). The only discussion relative to a plea agreement was the possibility that Heavygun might elect to plead to three of the misdemeanors charged against him prior to trial. *Id.* at 5. Apparently, a subsequent decision was made not to enter pleas to the misdemeanors at a pretrial hearing held April 7, 2010. See generally, (Doc. 9-44). Heavygun proceeded to trial on all charges.

[4] At the postconviction hearing, Spencer testified that after reviewing his notes, he determined he personally met with Heavygun eight times prior to trial, not seven. (Doc. 9-36 at 51).

with Heavygun by phone and by writing letters.  Spencer estimated that attorneys within the Office of the State Public Defender spent 340 hours preparing for trial. *Id*.

Spencer prepared an outline from notes he took during meetings of what he expected Heavygun's trial testimony to be.  *Id*. at □28.  Spencer provided the outline to Heavygun one month before trial.  The outline was reviewed and alterations were made during trial preparation.  *Id*.  At trial, Heavygun testified inconsistently with what he had during the preparation. Spencer had previously explained to Heavygun that his testimony relative to: Wells' violent past, Wells' angry demeanor on the night of the incident, Heavygun's own fear, and the previously unfinished fight between the two were "the key to getting the jury to find Heavygun acted in self-defense."  *Id*.

The Court noted Heavygun did not explain what Spencer should have done or how further preparation would have resulted in a different trial outcome.  *Id*. at □29.  The Court found evidence in the record revealed that Spencer's trial preparation was extensive.  *Id*.  Heavygun failed to establish that Spencer's preparation was deficient or unreasonable.  Spencer's efforts to prepare Heavygun to testify were undermined by Heavygun himself; he changed his theory of defense by describing his acts during the altercation with Wells as accidental.  *Id*. The Court held Heavygun failed to establish deficient performance prong of *Strickland*.

Again, Heavygun has not met his burden to defeat the deference due to the Montana Supreme Court's ruling. He has not demonstrated that the Court unreasonably applied *Strickland*. Moreover, despite his assertions to the contrary, Heavygun has not established the fact-finding of the Montana Supreme Court was objectively unreasonable.

As discussed above, prior violent acts of Wells not personally known to Heavygun were not brought out at trial due to "coercion" by Spencer, but because they did not constitute admissible evidence. The fact that Heavygun testified, contrary to the agreed upon justifiable use of force defense, that the prior acts of Wells he had witnessed were not on his mind when he elected to use deadly force, was not Spencer's decision, but Heavygun's own choice. In fact, Spencer attempted to give him a second opportunity to try and correct his testimony. *See* trial testimony at p. 17, *supra*. But Heavygun did not do so.

In sum, Heavygun cannot overcome the doubly deferential standard at play here between *Strickland* and the AEDPA. *See Richter*, 131 S. Ct. at 788. This claim, too, must be given deference.

### iv.    Cumulative error

The Montana Supreme Court held that because Heavygun had failed to establish an individual claim of ineffective assistance of counsel, there could be no cumulative error. Heavygun does not state what he finds to be unreasonable about

this determination.  *See generally* (Doc. 2).  And while it is true that individual

errors may not rise to the level of a constitutional violation, a collection of errors

might violate a defendant's constitutional rights, *Harris v. Wood*, 64 F. 3d 1432,

1438 (9th Cir. 1995), such is not the case here.  Because Heavygun has failed to

demonstrate deficient performance or prejudice on his individual ineffective

assistance of counsel claims, the nature of the claims does not support a finding of

cumulative prejudice.  The Montana Supreme Court's decision on this claim was

reasonable and should be afforded deference.

## V.      Conclusion

Mr. Heavygun's petition should be denied.  His second claim lacks merit

and the remainder of his claims do not survive deferential review under the

AEDPA.

## VI.     Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254

Proceedings.  A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right."  28 U.S.C.

2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of the constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further."  *Miller-El*

*Cockrell*, 537 U.S. 322, 327 (2003)(citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Mr. Heavygun's petition has not met the standard.  He has not made the substantial showing of a denial of a constitutional right and because reasonable jurists would not disagree with this finding, there is no reason to encourage further proceedings.  A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATIONS

1.  The Petition (Doc. 1) should be DENIED on the merits.

2.  The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3.  A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Heavygun may object to this Findings and Recommendation within 14 days.[5] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Heavygun must immediately notify the Court of any change in his

---

[5]  As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

<u>mailing address</u> by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this case without notice to him.

DATED this 4th day of April 2017.

/s/ John Johnston
John Johnston
United States Magistrate Judge